(17 App. Div. 491.)

## DEVLIN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. May 14, 1897.)

INJURY TO SERVANT—NEGLIGENCE OF MASTER—EVIDENCE.

Plaintiff's intestate, who was employed to attach an extra horse to defendant's street cars to assist in pulling them up a hill, was thrown under a car while detaching the horse at the top of the hill. The evidence showed that, as the car approached the place where the horse was ordinarily detached, intestate stooped down as if to unfasten the hook by which the horse was attached. The horse then began to turn off from the car, and intestate alighted. The hook had not been unfastened, and, as the horse came around, intestate was caught by the chain, the horse was thrown down, and intestate was thrown under the car. It was claimed that the horse was vicious, in that he had a tendency to turn out too quickly as he approached the place of being detached. There was no evidence that the horse turned before intestate pulled him around with the rein, and it was shown that he turned slowly. There was no evidence that the failure to stop the car before it ran over intestate resulted from any defect in the appliances. *Held*, that a finding that defendant was negligent could not be sustained.

Rumsey, J., dissenting.

Appeal from trial term, New York county.

Action by Joseph Devlin, as administrator of Terence Devlin, deceased, against the Metropolitan Street-Railway Company, to recover for damages for the death of plaintiff's intestate. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for new trial, made on the minutes, defendant appeals. Reversed.

Argued before RUMSEY, WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

John T. Little, Jr., for appellant.

G. W. Smith, for respondent.

WILLIAMS, J. The action was brought to recover damages resulting from the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The only grounds of negligence on the part of the defendant submitted to the jury related to the alleged viciousness of the horse used by the deceased, and the alleged defective brake upon the car. The duty of the defendant with reference to the horse and the brake was correctly stated to the jury, and the question whether the negligence of the defendant in these respects caused the accident and death was left to be determined by the jury, as a matter of fact. There was no motion for a nonsuit or direction of a verdict for the defendant based upon the absence of proof that such negligence caused the accident and the death, nor was there any exception to the charge in leaving this question to the jury. There was a motion for a new trial upon the minutes, however, based upon the ground, among others, that the verdict was contrary to the evidence, and contrary to the weight of the evidence. This motion was denied, and the question is thus presented whether there was evidence sufficient to support the finding that defendant's alleged negligence caused the accident and death.

The deceased was a young man, 20 years of age, and was employed on the defendant's street railroad as a hill boy, his duty requiring him to attach an extra horse to the cars at the bottom of the hill, at Lexington avenue and Thirty-Third street, to aid the regular teams attached to the cars in drawing the cars up the hill. The extra horse was attached to the cars by fastening a six or eight inch hook (at the end of chain one foot long, running from the whiffletree to which the horse was hitched) to the upright rod of the dashboard of the car. The deceased, on the occasion of the accident, fastened the horse he was using to one of the defendant's cars, at the foot of the hill, in the manner indicated; and the car proceeded up the bill, the deceased standing upon the car step, with the reins in one hand, and his other hand upon the dashboard, with one foot on the car step, and the other on the hook, to hold it at the bottom of the rod of the dashboard. There was another extra horse fastened to the other side of the car in the same manner, and driven by another young man, so that there were four horses drawing the car up the hill. The car was heavily loaded, having on board 70 to 80 passengers. Between Thirty-Fifth and Thirty-Sixth streets, the horse upon the side opposite deceased was detached, but the deceased's horse continued to aid in drawing the car further up the hill. As the car approached Thirty-Sixth street, where extra hill horses were ordinarily detached from the cars, the deceased was seen to stoop down towards where his hook was attached to the rod of the dashboard, as if trying to unfasten the hook from the rod. The horse then began to turn off from the car, and the boy got down from the car steps to the ground. As the horse came around, the hook not having been unfastened, and the car continuing to move along, the deceased was caught by the chain, the horse was thrown down, and the deceased was thrown under the car wheels, and was so injured as to cause his death. The viciousness of the horse alleged consisted in his tendency to turn around too quickly as he approached the place of being detached from the cars, and before he was directed to turn by the use of the reins, and the defect in the brake alleged consisted in its not always responding to the efforts of the driver. It was a ratchet brake, and some of the teeth were so worn that sometimes they would not catch when the handle was turned.

Now, passing the question of contributory negligence of the deceased, and assuming the horse was vicious and the brake defective, as claimed and found, the question is whether such viciousness of the horse or defective condition of the brake was shown to have caused the accident and death. Was it shown that the horse on this occasion, by reason of his viciousness, turned around of his own volition, and before he was directed to turn by the deceased by the use of the reins, or was it shown that the failure to stop the car was the result of the brake failing to serve its proper purpose, and not of the failure by the driver to use the brake sooner? We have carefully examined the evidence as to the turning of the horse, and we fail to find any proof that the horse turned of his own volition, and without being reined by the deceased, while we do find

evidence that the deceased reined the horse around at the time he turned. The burden of proof on this question was upon the plaintiff. There was no direct proof of voluntary turning by the horse, and we find no circumstances from which an inference could properly be drawn of that fact, certainly in the face of the direct evidence given that the deceased reined the horse around. The usual place for detaching the horse had been reached, and the deceased, before the horse turned, stooped down, as though trying to unfasten the hook. The natural inference would be that, as the deceased reached down to unfasten the hook, he drew upon the reins, so as to slack the chain and hook, and, the hook becoming loose when the chain became slack, that the horse was obeying the direction by the deceased through the medium of the reins. This inference is in accordance with the other evidence, not only as to the horse having been reined around, but the evidence to the effect that the horse turned around slowly, as was usual with all horses so used. The proof as to the viciousness of the horse at other times was that he would sometimes dash right around before he got to the end of the hill, and not be controlled by the reins at all. The proof fails to show that he did this on the occasion of this accident. On the contrary, he did not turn until the boy was stooping down to unfasten the hook, and then he turned around slowly, in the way other horses usually did. It seems to us that the evidence was entirely inadequate to sustain a finding that the alleged viciousness of the horse was the cause of the accident. Negligence, as the cause of an accident, cannot be presumed; it must be proved. Direct proof is not necessary. It may be inferred from circumstances, provided they are of such a character as to fairly justify such an inference. No such inference could be fairly drawn from the evidence upon this question. It seems to us the evidence was equally unsatisfactory and inadequate to support a finding that the defective condition of the brake was the cause of the accident. How far the car went after the horse turned around was somewhat uncertain, under the evidence. Some of the plaintiff's witnesses, and those nearest by, and in the better condition to judge correctly, testified that it moved but a few feet; while statements were made by some witnesses that it went as far as 20 feet. It certainly went far enough to throw the horse down, but it is hardly credible that it went 20 feet, considering the load it had on, the grade of the tracks, and the fact that the driver at once pulled up his horses, and used the brake, as the evidence tends to show. If it had gone 20 feet, there is no reason apparent why the deceased, who was thrown under the car at the very first, was not run over by the car wheels, which seems not to have been the case. Could the car have been stopped, with a perfect brake used promptly by the driver, in time to have avoided the accident? Did the driver discover the danger of accident at the very first? Did he pull up the horses, and apply the brake, as soon as he could? Did the brake operate as well as a perfect brake on this occasion (because the proof of defect in the brake was that sometimes it operated all right, and at other times it did not)? Was it the de-

fect of the brake, and not some other cause, that occasioned the accident and death? There was no proof, direct or circumstantial, that the brake on this occasion did not operate perfectly, and that it was not one of the other things suggested that really occasioned the accident. The front platform was quite crowded with passengers. The driver had his reins and his brake to look after. It does not appear whether he was able to see the hook itself from where he stood, and whether he was looking at it, so as to see, at the instant it occurred, that the deceased had failed to unfasten it from the rod at the time the horse turned around. It is very likely he did not discover the danger until almost the moment the deceased was caught by the chain, and thrown down; and it was then too late to pull up his horses, set the brake, stop the car, and avoid the accident. He may not have been watching carefully enough to see if the hook was unfastened, and he may not have acted promptly enough when he did appreciate the danger; but for any negligence of his there could be no recovery, he being a co-employé of the deceased, and, moreover, no such ground of negligence was submitted to the jury. There is no proof, by the evidence of any witness, that the brake did not operate perfectly on this occasion, but, on the contrary, it appears that it did operate later, and hold the car until the brake was released. There were no circumstances proven from which the inference could be fairly drawn that the defect in the brake caused the accident and death. The circumstances are not only as consistent with the conclusion that the defect in the brake was not the cause of the accident, but they are much more consistent with such conclusion than that the defective brake did cause the accident. It seems to us that the verdict, in the respects we have considered, was wholly unsupported by the evidence; and, this being so, there was no basis for charging the defendant with damages resulting from the death of the deceased.

The judgment and order appealed from must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except RUMSEY, J., dissenting.